UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>ROBERT BROOKE,<br><br>      Defendant. | **MEMORANDUM**<br>Case No. 23-CR-443 (FB) |

**BLOCK, Senior District Judge:**

  Defendant Robert Brooke has been at liberty since November 9, 2023. Following his conviction on December 8, 2025, I denied the government's request to remand him pending sentencing. Since the government has appealed, I take this opportunity to give a more fulsome explanation of my reasoning.[1] Realistically, my decision was made on the spot right after the jury returned its verdict and I

---

[1] It bears noting that seven of Brooke's eight co-defendants pleaded guilty. Although I denied each of the government's requests to remand those defendants pending sentencing, it appealed only the decision not to remand Brooke. Although the decision whether to appeal is entirely within the government's discretion, its use of that discretion raises a serious question whether insisting that defendants unwilling to plead guilty be remanded pending sentencing imposes an unconstitutional burden on the Sixth Amendment right to a jury trial. *Cf. United States v. Tavberidze*, 769 F. Supp. 3d 264, 270 (S.D.N.Y. 2025) (one-point sentencing reduction for pleading guilty in time to save government from preparing for trial "cannot possibly be an adequate ground for penalizing a defendant for the exercise of a constitutional right"). I need not address that issue in this case.

1

simply did not have the luxury of time to research the law and render a comprehensive decision.

As an initial matter, I received of a letter from the government, dated January 13, 2026, advising me that the filing of the appeal has divested me of jurisdiction to reconsider the decision.[2]  It was unnecessary; after three decades on the bench, I am well aware of that basic jurisdictional proscription.  But since the government has raised a jurisdictional issue, I should make it plain that I am not reconsidering my decision or changing any of its foundational facts.  On the contrary, I am simply "acting to aid the appeal," *United States v. Katsourgrakis*, 715 F.2d 769, 776 n.7 (2d Cir. 1983), by providing the reasons for my decision, reasons which time constraints prevented me from placing on the record at the time.  I believe that in doing so I am discharging my duty to serve the interests of justice.  *See, e.g., Padovani v. Bruchhausen*, 293 F.2d 546, 547-48 (2d Cir. 1961) ("[W]e do have an overriding responsibility to see that justice is done between litigants before the court.").

The government has the same obligation.  "[Its] interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).  It should not seek to chill me from assuring

---

[2]I told the government that I would be writing a memorandum to explain the rationale for my decision at a tangentially related hearing on January 12, 2026.

that the rights of a person whose liberty is at stake are protected. This is not a sporting event.

My knee-jerk opinion was that remand was not mandatory. *See* Trial Tr. at 536. My subsequent research confirmed that I was correct.

Brooke was convicted of Hobbs Act extortion (and acquitted of conspiracy to commit Hobbs Act extortion). Under 18 U.S.C. § 3143, any defendant awaiting imposition of sentencing for which a term of imprisonment is recommended must be detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." *Id*. § 3143(a)(1). For a "crime of violence" (and certain other crimes), release pending sentencing requires either a substantial likelihood that a motion for an acquittal or new trial will be granted, or a recommendation from the government that no term of imprisonment be imposed. *Id*. § 3143(a)(2). These additional requirements can be dispensed with "if it is clearly shown that there are exceptional reasons why [the defendant's] detention would not be appropriate." *Id*. § 3145(c).

For this purpose, a "crime of violence" means

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

3

      (C) any felony under chapter 77, 109A, 110, or 117.

*Id.* § 3156(a)(4). Subsection (C) does not apply because the cited chapters deal with human trafficking, sexual abuse, and sexual exploitation of minors. The remaining subsections reflect Congress's common practice of statutorily defining "crimes of violence" in terms of the elements of the offense—subsection (A)—with a residual clause—subsection (B)—covering crimes that do not have force, attempted force, or threatened force as an element, but that nevertheless present a "substantial risk" of such force in their commission. The Supreme Court has instructed courts facing such statutes to apply a "categorical approach," disregarding the facts of a particular case in favor of the statutory definition (for the elements clause) or the crime as it is committed "in the ordinary case" (for the residual clause). *James v. United States*, 550 U.S. 192, 208 (2007).

      Since 2015, the Supreme Court has voided several residual clauses as unconstitutionally vague. *See United States v. Johnson*, 576 U.S. 591 (2015) (residual clause defining "violent felony" in Armed Career Criminal Act); *Sessions v. Dimaya*, 584 U.S. 148 (2018) (residual clause defining "aggravated felony" in Immigration and Naturalization Act); *United States v. Davis*, 588 U.S. 445 (2019) (residual clause defining "crime of violence" in 18 U.S.C. § 924(c)). Its reasoning has uniformly been that the task of deciding how a particular crime is "ordinarily" committed and then how much risk that hypothetical crime presents, is too

4

subjective to give "ordinary people fair notice of the [punishable] conduct." *Johnson*, 576 U.S. at 595.

In *United States v. Watkins*, 940 F.3d 152 (2019), the Second Circuit addressed 18 U.S.C. § 3142(f)(1), which requires a pretrial detention hearing for cases involving "a crime of violence" and uses the same definition as § 3143(a)(2). It perceived a dichotomy between *Johnson*, *Dimaya*, and *Davis*—which dealt with statutes that either "establish new criminal offenses" or "impose severe or enhanced penalties," *Watkins*, 940 F.3d at 159—and *Beckles v. United States*, 580 U.S. 256 (2017), which held that a residual clause in the Sentencing Guidelines was not subject to a vagueness challenge, *see id.* at 265. It reasoned that, just as the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence," *Watkins*, 940 F.3d at 160 (quoting *Beckles*, 580 U.S. at 256), § 3142(f)(1) "merely performs a gate-keeping function by narrowing the types of offenses that render an arrestee eligible for a detention hearing, *id.* Since § 3142(f)(1) "does not define criminal offenses or imposed mandatory penalties," the circuit court concluded that the statute was not subject to a vagueness challenge. *Id.* at 161.

But § 3143(a)(2) does far more than dictate when a hearing is required or guide a court's discretion. Indeed, it significantly *limits* that discretion in the context of detention pending sentencing in most cases involving a crime of

5

violence. Motions for an acquittal or a new trial are rarely granted, the government almost never recommends no prison time for such crimes, and most cases do not—by definition—present "exceptional reasons." As a practical matter, § 3143(a)(2) makes presentence detention mandatory for defendants convicted of a "crime of violence," regardless of whether they pose a risk of flight or a danger to the community.

    The strictures of § 3142(a)(2) led Judge Caproni of the Southern District to distinguish *Watkins* on that basis. *See United States v. Cruz*, 2024 WL 3634861, at *4 (S.D.N.Y. Aug. 1, 2024) ("Because a near-certain loss of liberty is at play, the Undersigned declines to extend *Watkins* to this context."). I wholeheartedly agree. Detention pending sentencing is undoubtedly a loss of liberty for those previously released on bail. Due process protection for that liberty interest persists beyond conviction and, indeed, beyond sentencing. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (administrative denials of good-time credits require due process). For these reasons, I agree that a defendant is entitled to fair notice of the circumstances under which he will face mandatory detention prior to being sentenced. *Accord Cruz*, 2024 WL 3634861, at *5. Since the residual clause of § 3156(a)(4) is identical to the residual clause of § 924(c), *Davis* makes it clear that it is unconstitutionally vague.

All that remains is the elements clause. Since "completed Hobbs Act robberies are categorically crimes of violence," *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023), one might be forgiven for thinking the same was true of Hobbs Act extortion. Here is subsection (a) of the Hobbs Act in its entirety:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* § 1951(b)(2).

In *United States v. Nikolla*, 950 F.3d 51 (2d Cir. 2020), the Second Circuit observed that "the Hobbs Act defines several separate offenses, one of which applies to a defendant who 'commits or threatens physical violence to any person or property in furtherance of a plan or purpose to [commit Hobbs Act robbery or extortion].'" *Id.* at 54 (quoting 18 U.S.C. § 1951(a)). It then held that that offense was categorically a crime of violence. *See id.* ("The elements of that offense mirror almost exactly the definition of a 'crime of violence' in the Elements Clause of § 924(c).").

7

But Brooke was not convicted of violence in furtherance of Hobbs Act extortion; he was convicted of Hobbs Act extortion, specifically that he obtained property with its owner's consent, "which consent was induced by wrongful use of actual and threatened force, violence and *fear*."  Indictment ¶ 27 (emphasis added). It is beyond doubt that that last word includes fear of economic harm, *see United States v. Gotti*, 459 F.3d 296, 324-35 (2d Cir. 2006), and fear of reputational harm *United States v. Jackson*, 180 F.3d 55, 71 (2d Cir. 1999), neither of which necessarily entails "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A).  Provided the other elements of the crime were satisfied, saying nothing more than, "Unless you give me half of your profits, I will see to it that you lose every one of your customers," would be enough to support a conviction for Hobbs Act extortion. Under the categorical approach, it matters not that Brooke made no such statement. *See James*, 550 U.S. at 208.

"A number of recent district court decisions have held that Hobbs Act extortion does not qualify as a crime of violence under § 924(c)'s force clause because of the 'fear' element." *Capozzi v. United States*, 531 F. Supp. 3d 399, 404-05 (citing cases). While the question is technically an open one in the Second Circuit, the scope of the statutory language admits of no other conclusion:  Hobbs Act extortion can be committed by instilling a fear of economic or reputational

8

harm and is therefore not categorically a crime of violence under § 3156(a)(4)'s elements clause.

Since Brooke was not convicted of a crime of violence—or any other crime triggering § 3143(a)(2)—I had the discretion not to remand him upon a "find[ing] by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). It is undisputed that Brooke has been at liberty for more than two years on a $1 million bond with two sureties without incident. That, coupled with the evidence adduced at trial that Brooke had been involved in a single altercation over a disputed invoice, clearly convinced me that "he's [not] going to violate the Court's trust in keeping him at liberty," Trial Tr. at 536, and that he was not "a threat or . . . a risk of flight at all, under the circumstances," *id.* at 537.

The government's brief is due on January 27, 2026. In fairness to the government, I have endeavored to write this memorandum in sufficient time to afford the government ample opportunity to consider it. I hope it will be of value to both the government and the Second Circuit.

**SO ORDERED.**

    /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
January 15, 2026